UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN JOHNSON,<br><br>Defendant. | Crim. Action No. 02-310 (JDB) |

## MEMORANDUM OPINION & ORDER

Pending before the Court is defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This Court originally denied the motion in September 2020. Following defendant's timely appeal, the D.C. Circuit vacated that decision, concluding that this Court had erroneously treated U.S.S.G. § 1B1.13 as a binding policy statement when evaluating whether defendant had demonstrated "extraordinary and compelling reasons" for release. Applying the correct legal standard on remand, the Court will once again deny defendant's motion.

## Background

Kevin Johnson is sixty years old and currently incarcerated at FCI Cumberland, where he has served about 230 months of his 322-month sentence for unlawful possession of heroin with intent to distribute, possession of a firearm during a drug trafficking offense, and unlawful possession of a firearm and ammunition. See Mot. Pursuant to 18 U.S.C. § 3582(c) for Order Reducing Sentence & Granting Immediate Release, or in Alt., Mod J. to Allow Remainder of Sentence to be Served on Home Confinement ("Release Mot.") [ECF No. 54] at 1–2. His scheduled release date is June 5, 2025. See id. at 2; Find a Prisoner, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 23, 2021).

Johnson filed a motion for compassionate release under § 3582(c)(1)(A) in August 2020

1

"based on the 'extraordinary and compelling reasons' presented by the COVID-19 pandemic." See Release Mot. at 1. Specifically, he argued that his advanced age, in combination with his high cholesterol, farsightedness, and hypertension, placed him at increased risk of severe illness or death from COVID-19, and that, in light of that risk, his "excellent" prison record, and his efforts to rehabilitate himself, immediate release or home confinement was warranted. See id. at 1–2, 4–5. In the background section of his motion, Johnson also mentioned that his Guidelines sentencing range would be substantially lower if recalculated today because he would no longer qualify as a career offender under United States v. Winstead, 890 F.3d 1082 (D.C. Cir. 2018). See Release Mot. at 3. Winstead held that inchoate offenses do not count as controlled substance offenses under the career-offender guideline. See 890 F.3d at 1091–92. But Johnson made no further argument based on Winstead.

The government opposed Johnson's request, and the Court resolved the motion on the papers. In setting forth the legal standard for compassionate release, the Court explained that a sentence reduction was only authorized if, "'after considering the factors [in 18 U.S.C. § 3553(a)] to the extent that they are applicable,' the court concludes that 'extraordinary and compelling reasons warrant such a reduction' and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" such as § 1B1.13. Mem. Op. & Order (Sept. 12, 2020) [ECF No. 63] at 2 (quoting 18 U.S.C. § 3582(c)(1)(A)). Turning to the definition of "extraordinary and compelling reasons" for release, the Court reasoned that "at minimum" the "circumstances" defined in § 1B1.13—such as "suffering from a terminal illness" or "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover,"—are "extraordinary and compelling." See id. at 3 (quoting U.S.S.G.

§ 1B1.13, cmt. (n.1)). But the Court then noted that "[s]ome courts ha[d] also considered circumstances that are 'comparable or analogous'" to those in § 1B1.13. Id. (quoting United States v. Fox, Crim. No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019)). And the Court concluded that "[e]ven under this more expansive set of circumstances," Johnson "fail[ed] to demonstrate that his health conditions place[d] him at an 'extraordinary and compelling' need for release." Id. at 4.

Johnson timely appealed the denial of his motion, arguing that the Court had "construed too narrowly what may constitute an 'extraordinary and compelling' reason for a sentence reduction" by erroneously relying on § 1B1.13. See Appellant's Br. at 9, United States v. Johnson, — F. App'x —, 2021 WL 2523999 (D.C. Cir. June 4, 2021) (No. 20-3059). Johnson also contended that the Court failed to discuss his Winstead argument. See id. at 6, 21.

While Johnson's appeal was pending, the D.C. Circuit decided United States v. Long, 997 F.3d 342 (D.C. Cir. 2021), holding that § 1B1.13 is not "applicable" to defendant-filed motions for compassionate release under § 3582(c)(1)(A). Id. at 355. Two weeks later, the D.C. Circuit vacated this Court's decision in Johnson, concluding that under Long this Court had plainly erred by "considering itself bound by the policy statement" in § 1B1.13 when assessing "whether Johnson had demonstrated 'extraordinary and compelling reasons' warranting release." Johnson, 2021 WL 2523999, at *2. The D.C. Circuit remanded the case with the following instructions:

> On remand, the district court should assess whether Johnson has demonstrated "extraordinary and compelling reasons" warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), without treating U.S.S.G. § 1B1.13 as binding. The court thus may consider Johnson's argument based on Winstead, as well as other grounds that he contends justify a sentence reduction.

Id. at *4.

In light of the D.C. Circuit's instructions, this Court has determined that further briefing

would not benefit the resolution of the issues presented on remand. Johnson's motion for compassionate release is therefore once again ripe for consideration.

## **Analysis**

Under the First Step Act of 2018, a court may, upon motion by the Bureau of Prisons ("BOP") or by a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it concludes that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Edwards, Crim. A. No. 03-234 (JDB), 2021 WL 3128870, at *2 (D.D.C. July 22, 2021) (quoting United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020)). And a court may consider a defendant's motion for reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The government invoked § 3582(c)(1)(A)'s exhaustion requirement in its opposition, and in its prior opinion, the Court agreed with both parties that the requirement was satisfied here. See Mem. Op. & Order (Sept. 12, 2020) at 2; see also Gov't's Opp'n to Def.'s Mot. ("Gov't's Opp'n") [ECF No. 59] at 2; Release Mot. at 16. However, at the time, the Court only understood Johnson to seek compassionate release based on his medical conditions, age, and the COVID-19 pandemic. An argument based on Winstead had not been developed. Insofar as Johnson now claims that Winstead constitutes an extraordinary and compelling reason for release—as he first emphasized on appeal—the Court finds that argument was not properly exhausted in his request to the warden.

4

This Court carefully analyzed § 3582(c)(1)(A)'s exhaustion requirement in United States v. Douglas, Crim. No. 10-171-4 (JDB), 2020 WL 5816244 (D.D.C. Sept. 30, 2020), concluding not only that the requirement is "mandatory"[1] but also that the requirement is satisfied only if an inmate's compassionate release motion is brought on the same grounds as his request to the warden.[2]  Id. at *1–2.  The rationale for this approach is straightforward: the "plain language of the statute does not give this Court any flexibility in allowing waiver," United States v. Demaria, 17 Cr. 569 (ER), 2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020), and "[a]llowing an inmate to present the Court with an entirely new basis for a sentence reduction denies the [BOP] the opportunity to evaluate the request on its merits and undermines the mandatory statutory exhaustion requirement," Knight, 2020 WL 4059886, at *2.  Therefore, although an inmate's "request to the warden need not be identical in detail or specificity to the motion made in court," this Court has determined that "there must be a reasonable degree of overlap which gives the [BOP] a fair opportunity to consider whether to make the motion on the defendant's behalf."  Douglas, 2020 WL 5816244, at *2 (quoting Knight, 2020 WL 4059886, at *2).

Johnson filed a copy of his request to the warden as an exhibit to his motion.  See Ex. A. [ECF No. 61] at 7–8.  That request, dated May 16, 2020, states in full:

> Dear Waden [sic] J. R. Bell,

---

[1] See, e.g., United States v. Raia, 954 F.3d 594, 597, (3d Cir. 2020) (finding failure to exhaust remedies "presents a glaring roadblock foreclosing compassionate release"); United States v. Roberts, — F. Supp. 3d —, 2020 WL 1700032, at *2 & n.2 (S.D.N.Y. Apr. 8, 2020) ("[T]he Court must abide by Congress's choice, given Section 3582(c)'s clear command that the Court 'may not' grant compassionate release except under the conditions Congress prescribed.").

[2] See, e.g., United States v. Samak, Crim. A. No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020) ("For a petitioner's request to the warden to exhaust administrative remedies in accordance with § 3582(c)(1)(A), the request must be premised on the same facts alleged in the corresponding motion filed with the court."); United States v. Jenkins, 4:15-CR-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first."); see also, e.g., United States v. Knight, 1:15-CR-393, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020); United States v. Garcia-Duran, CR 410-100, 2020 WL 3477171, at *2 (S.D. Ga. June 25, 2020); United States v. Hernandez, No. 13cr4467-JAH, 2020 WL 3051105, at *4–5 (S.D. Cal. June 5, 2020); United States v. Mogavero, No. 2:15-cr-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020).

5

> I formally and respectfully request for [sic] Compassionate Release under 18 U.S.C. $3582(c)(1)(A) [sic]. This request is based on the "Extraordinary and Compelling" circumstances presented by the COVID-19 pandemic. I am particullary [sic] susceptible to contracting the novel coronavirus, which causes COVID-19, because I am housed in tight quarters along with numerous others, from whom I am unable to remain a safe distance as recommended by the CDC.
>
> Moreover, I am particularly susceptible to falling victim to the potentially fatal effects of COVID-19 due to my advanced age (60) and my underlying medical condition (Heart, Kidneys and Cholesterol). I have had no incident reports in the past 12 months. I have no gang affiliation and no sex crimes. I have served over 50% of my sentence. I have a stable home to return to and I have family support.
>
> Thank you for your timely consideration of this request.
>
> Respectfully submitted,
>
> Kevin Johnson

Id. at 8.

Johnson's request plainly seeks compassionate release based on the COVID-19 pandemic and his specified medical conditions—which are the grounds that this Court's prior opinion addressed. Indeed, the letter does not mention Winstead or even allude to the fact that Johnson might face a lower guideline range if sentenced today. Hence, to the extent that Johnson seeks compassionate release based on Winstead, that ground has not been properly exhausted under § 3582(c)(1)(A).

Even if Johnson had properly exhausted his Winstead argument, the Court would still conclude that Johnson waived that argument by failing to develop it in his motion. Johnson devoted two sentences in the background section of his motion to explaining that "his sentencing involves a Winstead issue" and then recapped Winstead's holding in an accompanying footnote,

noting a circuit split on the issue. See Release Mot. at 3 & n.2. But the "Argument" section of his motion focused exclusively on why his "[v]ulnerability to COVID-19 is an extraordinary and compelling reason to reduce his sentence," see id. at 4, and never once mentioned Winstead.

The government, for its part, did briefly address Johnson's Winstead reference in its opposition brief. See Gov't's Opp'n at 15 n.8. But the government construed that reference as an assertion that Winstead might inform the Court's § 3553(a) analysis, not the threshold question whether Johnson had presented extraordinary and compelling reasons for release. See id. at 15 & n.8. Johnson never sought to clarify this point or to respond to the government's contention that "a compassionate release motion [is] not . . . the appropriate vehicle for [a Winstead] claim." See id.; cf. Grant v. United States, #1:18-CV-01166-FPG, #1:14-CR-00134-RJA-HBS-6, 2020 WL 7640938, at *1 (W.D.N.Y. Dec. 23, 2020) (explaining that the court had denied inmate's request for a sentence reduction based on Winstead "as outside the scope of 18 U.S.C. § 3582(c), but found that it could be construed as a Section 2255 motion to vacate the sentence").

As courts have routinely recognized, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Herron v. Fannie Mae, Civ. A. No. 10-943 (RMC), 2016 WL 1177918, at *15 (D.D.C. Mar. 8, 2016) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Instead, "a litigant has an obligation to spell out its arguments squarely and distinctly," id., and any "[u]ndeveloped arguments may be deemed waived," Pub. Emps. for Env't Resp. v. EPA, 213 F. Supp. 3d 1, 26 (D.D.C. 2016) (citing Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013)). Such is the case here with respect to Johnson's argument that Winstead constitutes an extraordinary and compelling reason for release. Indeed, only if Johnson had actually sought relief based on Winstead would the government, and the Court, have been able to

7

address whether a motion under § 3582(c)(1)(A) was a proper vehicle for doing so.

Importantly, nothing in § 3582(c)(1)(A) precludes Johnson from submitting a new compassionate release request to the warden based on Winstead and then filing a second motion for compassionate release in this Court.  But any such motion must, in fact, make an argument that Winstead is an extraordinary and compelling circumstance that warrants a sentence reduction under § 3582(c)(1)(A).  And in properly developing such an argument, it would be wise to articulate why § 3582(c)(1)(A), and not 28 U.S.C. § 2255, is an appropriate vehicle for this claim.  See Grant, 2020 WL 7640938, at *1; Gov't's Opp'n at 15 n.8.

The only remaining question on remand, then, is whether "without treating § 1B1.13 as binding" the grounds that Johnson actually presented to the BOP and to this Court—namely, his vulnerability to COVID-19 based on his age and underlying health conditions, see Release Mot. at 5, 15—justify compassionate release.  See Johnson, 2021 WL 2523999, at *4.  Congress has not defined the term "extraordinary and compelling reasons" for release.  And this Court now explicitly recognizes that § 1B1.13 does not constrain its discretion in interpreting this term.  See id.; Long, 997 F.3d at 355.  Nonetheless, this Court agrees with other judges in this District that, in addition to the plain meaning of that term, the criteria in § 1B1.13 still provide "persuasive (albeit not binding) authority when considering [defendant-initiated compassionate release] motions based on medical conditions, age, or family circumstances." See United States v. Shepard, Crim. A. No. 07-85 (RDM), 2021 WL 848720, at *4 (D.D.C. Mar. 4, 2021); see also, e.g., United States v. Long, Crim. No. 99-0182-PLF, 2021 WL 3185600, at *2 (D.D.C. July 28, 2021) ("[E]ven if the [§ 1B1.13] policy statement is not controlling for defendant-filed motions, it may still provide guidance as to the extraordinary and compelling nature of a defendant's circumstances."); United States v. Speaks, Crim. No. 18-cr-111-1 (DLF), 2021 WL 3128871, at *3 (D.D.C. July 23, 2021)
8

(same).  With those considerations in mind, the Court turns to Johnson's proffered reasons for release.

At the outset, insofar as Johnson seeks to argue that COVID-19 alone establishes extraordinary and compelling reasons for release, that claim is a non-starter.  See Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. . . .").  Instead, the Court will consider Johnson's health conditions (high cholesterol, farsightedness, hypertension, and advanced age[3]) and the state of COVID-19 at FCI Cumberland to determine whether compassionate release is warranted.

To begin, high cholesterol and farsightedness are not recognized by the Centers for Disease Control and Prevention ("CDC") as conditions that increase an individual's risk of severe illness from COVID-19.  See Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021).  Although the CDC's guidance "is not the only source of information about COVID-19," it "is material," United States v. Powell, 468 F. Supp. 3d 398, 403 (D.D.C. 2020), and Johnson has not identified any contrary authority.  Absent any explanation from Johnson as to how these particular ailments might enhance the risk that COVID-19 poses to him, the Court fails to see how his high cholesterol and farsightedness provide grounds for compassionate release.

Johnson's high blood pressure also does not constitute an extraordinary and compelling

---

[3] In his request to the warden, Johnson also mentioned an issue with his "Kidneys."  See Ex. A at 8.  Johnson's medical records do suggest that his "GFR" readings may be indicative of chronic kidney disease.  See, e.g., id. at 14–15, 20.  But Johnson chose not to mention any kidney-related health conditions in his motion (or reply brief).  Therefore, any such argument is waived.  See Pub. Emps. for Env't Resp., 213 F. Supp. 3d at 26.

Furthermore, although Johnson did not mention farsightedness in his letter request to the warden, his medical records (which were attached to that request), do note that Johnson is suffering from that condition, see Ex. A at 11, and Johnson then addressed the issue in his motion to the Court.  Hence, the Court will address Johnson's farsightedness as a basis for compassionate release.

reason for release. When the Court originally denied Johnson's motion, the CDC's guidance advised that hypertension placed an individual at "an increased risk of severe illness from COVID-19." Mem. Op. & Order (Sept. 12, 2020) at 4. Notwithstanding this link, this Court concluded that Johnson had "not carried his burden of demonstrating that his hypertension is an extraordinary and compelling reason for release" because his medical records showed that his hypertension "appears well managed," "[he] [is] taking medication, and report[s] no complaints." Id. The CDC has since revised its guidance—now identifying hypertension as a condition that "possibly" "can make [a person] more likely to get severely ill from COVID-19." See Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021) (emphasis added). Related materials on the CDC's website explain that "multiple studies [have] reached different conclusions about [the] risk associated with" hypertension and that the evidence of increased risk is "mixed." Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last updated May 12, 2021).

The Court is not aware of any new evidence to suggest that Johnson's hypertension has worsened. And since the recognized link between hypertension and severe COVID-related illness is more tenuous today than it was when Johnson's motion was first denied, the Court continues to find that Johnson's well-managed hypertension does not qualify as an extraordinary and compelling reason for release. See United States v. Brown, 2:16-cr-00071, 2021 WL 3485895, at *5 (W.D. Pa. Aug. 9, 2021) ("[B]ecause the CDC provides only that systemic hypertension 'possibly' 'can' raise one's risk of contracting severe illness from COVID-19, and because [defendant] does not argue that the BOP is not appropriately treating his hypertension, the Court

finds that [defendant's] hypertension does not rise to an 'extraordinary and compelling' level that could justify his release.") (citation omitted); Robinson, 2021 WL 1318027, at *8 ("In light of the uncertainties regarding the risks that stage II hypertension poses to COVID-19 patients, the Court cannot conclude, on the present record, that [defendant's] hypertension constitutes an extraordinary and compelling reason warranting his release."); cf. United States v. Douglas, Crim. A. No. 10-171-4 (JDB), 2021 WL 214563, at *5–6 (D.D.C. Jan. 21, 2021) (granting compassionate release to inmate whose "particular case of hypertension [wa]s severe," qualified as "hypertensive crisis . . . requiring immediate emergency medical attention," and had not been adequately monitored by BOP to date).

Johnson's "advanced age" is not an appropriate ground for compassionate release either. See Release Mot. at 33. To be sure, at sixty years old, Johnson is at an increased risk of serious illness from COVID-19 relative to people in their thirties, forties, and fifties. COVID-19 Risks & Vaccine Information for Older Adults, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 23, 2021). But the CDC has recognized that "[p]eople 85 and older are the most likely to get very sick." Id. Because Johnson does not fall within—or even nearly approach—that age bracket, the Court cannot find that he merits compassionate release on this basis. Cf. United States v. Hicks, Crim. A. No. 93-97-2 (BAH), 2021 WL 1634692, at *5 n.9 (D.D.C. Apr. 27, 2021) (concluding that defendant's age did not warrant compassionate release because "the greatest risk for severe [COVID-related] illness is . . . among those 85 and older," and, "[t]hough defendant, at 51 years of age, is at higher risk for severe illness than a younger person, he is not considered to be in a high-risk age category"); United States v. Esperanza, Case No. 6:16-cr-00319-AA, 2021 WL 1818484, at *2 (D. Or. May 6, 2021) (finding that defendant's age did not justify compassionate release even though "at 59

[he] f[ell] within an age range that appears to be a moderate risk" for severe COVID-related illness).

The guidance set forth in § 1B1.13, which states that the "Age of the Defendant" may support compassionate release under certain limited circumstances, buttresses the Court's conclusion. Specifically, § 1B1.13 directs that for BOP-initiated motions, compassionate release based on age may be warranted if the defendant is "[1] at least 65 years old; . . . [2] experiencing a serious deterioration in physical or mental health because of the aging process; and [3] has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13. Johnson meets only the third criteria here. And it makes sense that age alone cannot justify compassionate release: given that 6.1 percent of all BOP inmates are over the age of sixty-one, Johnson's age alone is hardly extraordinary by any plain meaning of the word. See Inmate Age, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_age.jsp (last visited Aug. 23, 2021); see also United States v. Bristol, Crim. A. No. 18-00375, 2021 WL 2935980, at *3 (E.D. Pa. July 13, 2021) ("If [the sixty-one-year-old defendant's] age alone [was] a sufficient factor to grant compassionate release in these instances, it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release[.]") (quoting United States v. Haney, 454 F. Supp. 3d 316, 323 (S.D.N.Y. 2020)).

Finally, although COVID-19 remains a real concern, the state of the pandemic in the United States has changed significantly since the Court first considered Johnson's motion eleven months ago. According to the government's brief on appeal, Johnson "received his first dose of the Moderna COVID-19 vaccine on March 1, 2021." Appellee's Br. at 31 n.8, Johnson, 2021 WL 2523999 (No. 20-3059). Presumably, by now Johnson has been fully vaccinated. Given the

efficacy of the Moderna vaccine, the Court does not find that releasing Johnson from prison is warranted to mitigate the risk of COVID-19.[4] Cf. Shepard, 2021 WL 848720, at *5 (concluding that, even though defendant's "age combined with his other risk factors might otherwise merit release," release was not warranted "[g]iven that [defendant] received his first dose of the vaccine about two weeks ago (and, presumably, will receive his second dose in the near future)"); Long, 2021 WL 3185600, at *5 ("Because [defendant] is fully vaccinated against COVID-19," his chronic kidney disease, hypertension, and age (fifty six) "do not establish extraordinary and compelling circumstances that would warrant a sentence reduction."); see also Moderna COVID-19 Frequently Asked Questions, Food & Drug Administration, https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/moderna-covid-19-vaccine-frequently-asked-questions (last visited Aug. 23, 2021) (reporting that the Moderna vaccine "was 94.1% effective in preventing COVID-19 disease" in clinical trials).

The Court is also not persuaded that Johnson's incarceration at FCI Cumberland considerably increases his chance of getting COVID-19. To date, 55.5 percent of inmates at FCI Cumberland have been fully vaccinated against COVID-19, surpassing the national vaccination rate of 51.5 percent. Compare COVID-19 Vaccine Implementation, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021); FCI Cumberland, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/cum/ (last visited Aug. 23, 2021), with COVID-19 Vaccinations in the United States, CDC, https://covid.cdc.gov/covid-data-

---

[4] The vaccines' continued efficacy against the Delta variant also informs the Court's assessment. Although there remains uncertainty regarding future variants that might arise, research shows that the Moderna vaccine is effective at preventing symptomatic COVID-19 from the Delta variant and is "highly effective at preventing serious illness and hospitalization." Jared S. Hopkins & Robbie Whelan, The Delta Variant, Covid-19 Symptoms and Vaccine Efficacy: What to Know, Wall Street Journal (Aug. 17, 2021), https://www.wsj.com/articles/the-delta-variant-and-covid-19-vaccines-what-to-know-11627079604; see also Mary Louise Kelly, Fauci Says Current Vaccines Will Stand Up to the Delta Variant, NPR (July 8, 2021), https://www.npr.org/sections/coronavirus-live-updates/2021/07/08/1014214448/fauci-says-current-vaccines-will-stand-up-to-the-delta-variant.

tracker/#vaccinations_vacc-total-admin-rate-total (last visited Aug. 23, 2021).  None of the 1,185 inmates at FCI Cumberland is currently infected with COVID-19, and there are only two positive cases among staff members.  See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021); FCI Cumberland, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/cum/ (last visited Aug. 23, 2021).  The Office of Inspector General's Facility-Level BOP COVID-19 map also shows that FCI Cumberland has consistently reported no more than one active inmate case (and frequently zero active cases) since April 1, 2021.  See Facility-Level BOP COVID-19 Trends, Office of the Inspector General, https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_2 (last visited Aug. 23, 2021).  In light of these statistics, "it is not clear that prison presents the same heightened risk of COVID-19 exposure that it once did." Edwards, 2021 WL 3128870, at *3; see also United States v. Jackson, Case No. 1:19-cr-347 (TNM), 2021 WL 1299439, at *2 (D.D.C. Apr. 7, 2021) (holding that "statistics" on the number of fully vaccinated individuals at defendant's facility  "undermine[d] [his] claims" for compassionate release).

In sum, Johnson's Winstead argument is not properly before the Court because he did not present it to the BOP or adequately develop it in his motion to this Court.  And, even "without treating § 1B1.13 as binding," the Court still cannot conclude that Johnson's health conditions, age, and the COVID-19 pandemic—either separately or together—establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A).  Because such a finding is necessary for either form of relief that Johnson seeks (immediate release or home confinement), his motion must be denied.

*   *   *

For the foregoing reasons, it is hereby **ORDERED** that [54] Johnson's motion pursuant to

18 U.S.C. § 3582(c) for an order reducing his sentence and granting immediate release is **DENIED**.

    **SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: <u>August 23, 2021</u>