**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. Action No. 02-310 (JDB)** |
| **KEVIN JOHNSON,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

Defendant Kevin Johnson is a 61-year-old man who has served over 20 years of a nearly 27-year sentence for non-violent offenses.  See Sentence Monitoring Computation Data [ECF No. 88-2] at 1–3; Presentence Investigation Report [ECF No. 89] ("PSR") at 3 (sealed).[1]  He has filed a motion for compassionate release, arguing, among other things, that if he were sentenced today, he would likely receive a sentence of around only 13 to 15 years.  See Def.'s Emergency Mot. for Compassionate Release [ECF No. 80] ("Mot.") at 14.  After considering all the facts of Johnson's case—including the disparity between the sentence he has already served and the sentence he would likely receive if sentenced today—the Court agrees that Johnson has demonstrated extraordinary and compelling reasons warranting his release.  Hence, for the reasons explained below, the Court will grant Johnson's motion.

**Background**

**I.      Facts**

In June 2002, Johnson was standing outside a building in southeast D.C., saw police officers approaching him, and ran away.  Mot. at 3; PSR ¶ 6.  The officers chased after Johnson

---

[1] The filing at ECF Number 89 contains multiple exhibits, and citations to these exhibits shall use the documents' internal pagination instead of the electronic numbers created for the filing as a whole.

and saw him throw an object into a bush.  Mot. at 3; PSR ¶ 6.  Johnson was stopped, and a search of his person uncovered $543.25 and three marijuana cigarettes laced with cocaine.  Mot. at 3; PSR ¶ 6.  The officers also found several small Ziplock baggies under the bush containing a total of 2.4 grams of heroin.  Mot. at 3; PSR ¶¶ 6–7.  Near the bush was a loaded handgun.  Mot. at 3; PSR ¶ 6.  Johnson was 41 at the time of his arrest.  See PSR at 3.

Johnson was indicted for violating 21 U.S.C. § 841(a)(1), (b)(1)(C) (unlawfully possessing heroin with intent to distribute); 18 U.S.C. § 924(c)(1) (using, carrying, and possessing a firearm during a drug trafficking offense); and 18 U.S.C. § 922(g)(1) (unlawful possession of a firearm by a person convicted of a felony).  Indictment [ECF No. 6].  A jury found him guilty on all three counts.  Mot. at 2; Min. Entry, Dec. 19, 2002.

The Probation Office determined that the base offense level for count one (heroin possession with intent to distribute) was 12 since Johnson possessed 2.4 net grams of heroin.  PSR ¶ 14; U.S. Sent'g Guidelines Manual § 2D1.1(a)(3), (c)(14) (U.S. Sent'g Comm'n 2002) ("2002 USSG").  Putting count two (using, carrying, and possessing a firearm during a drug trafficking offense) to the side for a moment, the base offense level for count three (felon-in-possession offense) was 24 because Johnson had two prior felony convictions for drug offenses.  Mot. at 3; PSR ¶ 20; see 2002 USSG § 2K2.1(a)(2).  These felony convictions were for (1) unlawful distribution of phencyclidine ("PCP") and marijuana and (2) attempted distribution of PCP.  Mot. at 3; PSR ¶ 20 & n.1.  The combined adjusted offense level for counts one and three was 24.  See PSR ¶¶ 25–32; see also 2002 USSG § 3D1.4 (outlining rules for determining combined offense level for multiple offenses).

The Probation Office next determined that Johnson's two prior felony convictions meant that he was a career offender and that the offense level for count one should be enhanced to 34.

Mot. at 4; PSR ¶ 33; see also 2002 USSG § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is . . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of . . . a controlled substance offense.").   Johnson also had several prior misdemeanor convictions, and the Probation Office concluded that his record merited 13 criminal history points, placing him in category VI.  Mot. at 3; PSR ¶ 47.[2]  A total offense level of 34 and a criminal history category of VI resulted in a guideline range for imprisonment of 262 to 327 months for count one.  PSR ¶ 81; see also 2002 USSG § 5A (sentencing table).  A total offense level of 24 and a criminal history category of VI resulted in a guideline range for imprisonment of 100 to 125 months for count three.  See 2002 USSG § 5A.[3]

Count two was subject to a different sentencing calculation.  See PSR ¶¶ 36–37.  Under § 2K2.4(b), the guideline sentence for this offense was the minimum term of imprisonment required by statute, id.; 2002 USSG § 2K2.4(b), which was five years, see 18 U.S.C. § 924(c)(1)(A)(i).  The relevant statute also provided that the sentence for count two could not run concurrently with any other term of imprisonment.  See 18 U.S.C. § 924(c)(1)(D)(ii).

Johnson was sentenced in February 2003.  Sentencing Tr. [ECF No. 49] at 1.  At that time, the sentencing guidelines were mandatory.  See id. at 18:16–19:2.  The Court noted this constraint

---

[2] While Johnson's criminal history placed him in category VI, the sentencing guidelines also required that he fall within category VI because he was sentenced as a career offender.  See PSR ¶ 48; 2002 USSG § 4B1.1(b).

[3] The Probation Office considered counts one and three together to calculate one guideline range of imprisonment for both counts.  PSR ¶ 81.  While this makes some sense given that counts one and three had to be considered together to determine the combined adjusted offense level for the two offenses, see PSR ¶¶ 25–32; 2002 USSG § 3D1.4, it also obscures the fact that the career offender enhancement applied only to count one.  The career offender enhancement did not apply to count three—felon-in-possession offense—because that offense was not a "crime of violence or a controlled substance offense."  See 2002 USSG §§ 4B1.1(a), 4B1.2(a)–(b).  As will be explained shortly, Johnson received separate sentences for counts one and three that reflected the fact that the guidelines required a stricter sentence for count one.  See J. in Criminal Case [ECF No. 27] at 2.

at sentencing, commenting that "the sentencing guidelines do limit the flexibility and judgment of the court in circumstances such as this . . . [but] whether one agrees or disagrees with particulars of the sentencing guidelines, it is the law, and it is binding on all of us . . . ." Id. at 18:16–24.  After summarizing the appropriate guideline calculations for each offense, id. at 3:15–6:20, the Court sentenced Johnson to 262 months of imprisonment on count one (the minimum permissible sentence), 120 months of imprisonment on count three, and 60 months of imprisonment on count two, id. at 14:2–5; J. in Criminal Case at 2.  The sentences for counts one and three were to run concurrently.  Sentencing Tr. at 14:2–5; J. in Criminal Case at 2.  Johnson's total sentence of incarceration was therefore 322 months (or 26 years and 10 months).  See Sentencing Tr. at 14:2–5; J. in Criminal Case at 2.  The Court also sentenced Johnson to six years of supervised release following his incarceration.  Sentencing Tr. at 15:15–20; J. in Criminal Case at 3 (six years of supervised release for count one to be served concurrently with three years of supervised release for each of counts two and three).

There have been two important and relevant changes in sentencing law since 2003.  First, the D.C. Circuit has held that attempted distribution of a controlled substance does not qualify as a controlled substance offense for the purpose of determining whether a defendant is a career offender.  United States v. Winstead, 890 F.3d 1082, 1091 (D.C. Cir. 2018).  The government does not dispute that under Winstead, Johnson would not be sentenced as a career offender today because one of his two felony drug convictions was for an inchoate offense, and the Court considers the issue conceded.  Second, while the guidelines must be considered at sentencing, they are no longer binding.  United States v. Booker, 543 U.S. 220, 245 (2005).  Hence, if Johnson were sentenced under the law as it exists today, his guideline range of incarceration would be

substantially lower and the Court would also have the freedom to deviate below (or above) the guidelines if it concluded that such a variance was warranted.

## II.    Procedural History

The D.C. Circuit affirmed Johnson's convictions in 2004.  United States v. Johnson (Johnson I), 98 F. App'x 5, 6–7 (D.C. Cir. 2004).  Johnson filed his first motion for compassionate release in August 2020, arguing that his advanced age and excellent record while incarcerated, in combination with the COVID-19 outbreak, warranted his release.  Mot. Pursuant to 18 U.S.C. § 3582(c) [ECF No. 54] ("First Compassionate Release Mot.") at 1.  The Court denied that motion in September.  United States v. Johnson (Johnson II), Crim. A. No. 02-310 (JDB), 2020 WL 5518360, at *2 (D.D.C. Sept. 12, 2020) ("None of [the factors Johnson identifies,] alone or in combination, qualify as 'extraordinary and compelling reasons' for release under § 3582(c)(1)(A).").  The Court did not discuss whether the disparity between the sentence Johnson received and the one he would likely receive if sentenced today weighed in favor of granting his motion.  The D.C. Circuit vacated this opinion on appeal, holding that the Court erred by considering itself bound by a policy statement accompanying the sentencing guidelines that is binding only when the compassionate release motion is filed by the Director of the Bureau of Prisons.  United States v. Johnson (Johnson III), 858 F. App'x 381, 382–85 (D.C. Cir. 2021); see also 2002 USSG § 1B1.13 cmt. (discussing what constitutes extraordinary and compelling reasons for release for motions filed by the Bureau of Prisons on a defendant's behalf).

The Court again denied Johnson's motion on remand.  United States v. Johnson (Johnson IV), Crim. A. No. 02-310 (JDB), 2021 WL 3737681, at *1 (D.D.C. Aug. 24, 2021).  In this opinion, the Court briefly discussed Johnson's argument that he received a much stricter sentence than he would likely receive today.  See id. at *1, *3–4.  The Court concluded, however, that the argument

was not properly presented because Johnson had failed to raise the claim with the warden of his prison (FCI Cumberland) before filing his compassionate release motion and had failed to fully develop the argument in the motion itself.  Id. at *3–4.  The Court explicitly noted that "nothing in § 3582(c)(1)(A) precludes Johnson from submitting a new compassionate release request to the warden based on [the changes in law] and then filing a second motion for compassionate release in this Court."  Id. at *4 (further stating that such a motion should explain why a compassionate release motion, instead of a habeas motion, is a proper vehicle for Johnson's claim).  The Court then considered Johnson's other arguments for release and concluded that they did not meet the "extraordinary and compelling standard."  Id. at *5–7.  The D.C. Circuit affirmed this Court's decision.  United States v. Johnson (Johnson V), No. 21-3061, 2021 WL 5537704, at *1 (D.C. Cir. Nov. 17, 2021).

In October 2021, Johnson, through counsel, sent a letter to the warden at his prison requesting compassionate release.  Compassionate Release Request [ECF No. 80-2] at 1.  The letter cites as reasons for his release Johnson's "age, race, gender, health conditions, and complete medical record; the ongoing COVID-19 pandemic and all of the attendant circumstances . . . ; and changes in the law that prove his sentence was unfair and is far greater than necessary to meet the purposes of sentencing."  Id.  Johnson's request also argues that he should not have been sentenced as a career offender and that he is not a danger to the community.  Id. at 1–2.[4]  The warden never responded to Johnson's letter.  Mot. at 14.

Johnson filed this second compassionate release motion in January 2022.  See generally Mot.  The government filed its opposition in March, United States' Opp'n to Mot. [ECF No. 88]

---

[4] Johnson's request further claims that his 18 U.S.C. § 922(g)(1) conviction was unconstitutional pursuant to the Supreme Court's recent opinion in Rehaif v. United States, 139 S. Ct. 2191 (2019), Compassionate Release Request at 1, but Johnson's compassionate release motion does not make this argument, and the Court will not consider the issue here.

("Opp'n") at 33, and Johnson has now filed his reply, Def.'s Reply Re: Mot. [ECF No. 90] ("Reply").  The motion is now ripe for this Court's decision.

## Legal Standards

The compassionate release statute authorizes a court to reduce a defendant's sentence in limited circumstances.  See 18 U.S.C. § 3582(c)(1).  "The principal requirement of the statute is that the defendant must present 'extraordinary and compelling reasons'" warranting a reduction.  United States v. Jackson, 26 F.4th 994, 1001 (D.C. Cir. 2022) (citation omitted).  When deciding whether extraordinary and compelling reasons warrant such a reduction, a court must "act consistently with the sentencing requirements of section 3553(a)."  Id.  The statute further requires "that the grant of compassionate release must be consistent 'with applicable policy statements issued by the Sentencing Commission.'"  Id. (citation omitted).  "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)."  United States v. Long, Crim. A. No. 10-171-1 (JDB), 2021 WL 3792949, at *1 (D.D.C. Aug. 26, 2021) (citation omitted).

Under the most recent version of § 3582(c), a defendant may file a motion for compassionate relief on his or her own behalf, but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  This exhaustion requirement is not jurisdictional, United States v. Johnson, 464 F. Supp. 3d 22, 28–29 (D.D.C. 2020) (Jackson, J.), but it is mandatory, United States v. Morales, Crim. A. No. 06-248-4 (JDB), 2021 WL 4622461, at *2–3 & n.3 (D.D.C. Oct. 7, 2021).  But see United States v. Sumler, Crim. A. No. 95-154-2 (BAH), 2021 WL 6134594, at *23 (D.D.C. Dec. 28, 2021) (holding

the exhaustion requirement is neither jurisdictional nor mandatory).  To satisfy the exhaustion requirement, the defendant must "present the same factual basis for the compassionate-release request to the warden" that the defendant presents to the court.  United States v. Douglas, Crim. A. No. 10-171-4 (JDB), 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (quoting United States v. Mogavero, Case No. 2:15-cr-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020)); cf. 28 C.F.R. § 571.61(a).  "The exhaustion requirement should not be applied hyper-technically, and the request to the warden need not be identical in detail or specificity to the motion made in court . . . ."  Douglas, 2020 WL 5816244, at *2 (quoting United States v. Knight, 1:15-CR-393, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020)).  "[B]ut there must be a reasonable degree of overlap which gives the [Bureau of Prisons] a fair opportunity to consider whether to make the motion on the defendant's behalf."  Id. (quoting Knight, 2020 WL 4059886, at *2).

## Analysis

Johnson's motion raises three main questions: what may a court consider when determining whether a defendant has presented extraordinary and compelling reasons for release, has Johnson established extraordinary and compelling reasons for his release, and do the § 3553(a) factors support a reduction in Johnson's sentence?  The Court will address each question in turn.

### I.   What May a Court Consider When Resolving a Compassionate Release Motion

The parties disagree about what factors a Court may consider when determining whether a defendant has established extraordinary and compelling reasons for his release.  The disagreement revolves around the Sentencing Guidelines Manual's policy statement at § 1B1.13.  The policy statement provides commentary on when extraordinary and compelling reasons are present, U.S. Sent'g Guidelines Manual § 1B1.13 cmt. nn.1–2 (U.S. Sent'g Comm'n 2021), and the compassionate release statute states that a court may not reduce a defendant's sentence unless it

finds "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A).  Hence, for several years, § 3582(c)(1)(A) required courts to consider only the factors identified in § 1B1.13 when deciding whether to grant compassionate release motions.  In 2018, however, Congress enacted the First Step Act and amended § 3582(c) to enable a defendant to file a compassionate release motion on his or her own behalf.  See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat 5194, 5239.  But because the Sentencing Commission has lacked a quorum and has been unable to update its policy statement, "[S]ection 1B1.13 still refers in multiple places to [the Director of the Bureau of Prisons] having the exclusive authority to bring a compassionate release motion before the court." United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).

The D.C. Circuit confronted this problem in United States v. Long, 997 F.3d 342 (D.C. Cir. 2021), and held that while § 3582(c)(1)(A) still requires a court to consider whether granting a compassionate release motion "is consistent with applicable policy statements issued by the Sentencing Commission," § 1B1.13 is not "applicable" to compassionate release motions filed directly by defendants because it "applies only to motions for compassionate release filed by the Bureau of Prisons," 997 F.3d at 355; accord id. ("The policy statement's inapplicability is plain on its face.").  Thus, under Long, § 1B1.13 is not binding in this case, and the Court may consider factors outside those identified in the policy statement to determine whether Johnson has met the "extraordinary and compelling" showing required for release.  See Johnson III, 858 F. App'x at 383–85.  Both the government and Johnson agree with this conclusion, even if the government's agreement is begrudging.  See Opp'n at 14–15, 21–22; Reply at 5.

But the parties disagree on two related issues.  The first is whether a court should consider § 1B1.13's guidance at all when considering a compassionate release motion brought by a

defendant.  <u>Compare</u> Opp'n at 21–22 (arguing the policy statement should be a "guidepost" and that courts should not "reject the policy statement and instead venture into their own, idiosyncratic, case-by-case assessments"), <u>with</u> Reply at 5 ("[The government] never explains how a policy statement whose 'inapplicability is plain on its face' can function as a 'guidepost.'" (citations omitted)).  The Court has considered this question in this litigation before, and, for the reasons explained previously, concludes that "the criteria in § 1B1.13 still provide 'persuasive (albeit not binding) authority when considering'" compassionate release motions brought directly by defendants.  <u>Johnson IV</u>, 2021 WL 3737681, at *4 (collecting cases); <u>accord</u> <u>United States v. Shabazz</u>, Crim. A. No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021) ("Though no longer <u>binding</u> . . . [§ 1B1.13] remains an important and useful guidepost for courts considering [compassionate release] motions, and the Court sees 'no reason to disregard completely the Commission's decades of expertise in assessing the substantive contours of the "extraordinary and compelling reasons" that might justify release.'" (quoting <u>United States v. Hicks</u>, Crim. A. No. 93-97-2 (BAH), 2021 WL 1634692, at *4 (D.D.C. Apr. 27, 2021))).

The parties' second disagreement is more difficult to resolve: may a court consider nonretroactive changes in law as a factor supporting a compassionate release motion?  Section 1B1.13 does not specifically state that changes in law can support finding that extraordinary and compelling reasons exist, but it does include a catch-all, "Other Reasons" category.  U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(D) (U.S. Sent'g Comm'n 2021).  Courts across the country are divided on the appropriateness of considering nonretroactive changes in law when deciding a compassionate release motion.  The Eighth, Sixth, Third, and Seventh Circuits have answered this question in the negative, holding that nonretroactive changes in law are irrelevant in the compassionate release context, or, at the very least, not sufficiently weighty to be considered

"extraordinary and compelling."[5]  At least one judge in this District has agreed with this approach.

Hicks, 2021 WL 1634692, at *8 ("To treat changes in the law and related mitigating factors as an

extraordinary and compelling reason would effectively override [clear] statutory limitations with

a definitional sleight-of-hand by allowing any defendant sentenced under any subsequently

amended statute to seek early release under 18 U.S.C. § 3582(c)(1)(A) . . . .").

The First and Fourth Circuits disagree and have held that nonretroactive changes in law

can at least partially justify finding that extraordinary and compelling reasons warrant reducing a

defendant's sentence.[6]  The Tenth Circuit has largely agreed with the First and Fourth Circuits,

United States v. McGee, 992 F.3d 1035, 1047 (10th Cir. 2021), but it has specified that a

nonretroactive change cannot by itself justify sentence reduction, id. at 1048.[7]  Several judges in

this District have agreed with the First, Fourth, and Tenth Circuits that nonretroactive changes in

law are relevant considerations in the compassionate release context.  See, e.g., United States v.

Williams, Crim. A. No. 91-559-6 (TFH), 2021 WL 5206206, at *3–4, *8–9 (D.D.C. Nov. 9, 2021);

---

[5] E.g., United States v. Crandall, 25 F.4th 582, 585–86 (8th Cir. 2022) ("The compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy."); United States v. McKinnie, 24 F.4th 583, 588–89 (6th Cir. 2022) ("[A] non-retroactive judicial decision cannot support a finding of extraordinary and compelling circumstances whether 'offered alone or combined with other personal factors.'" (citation omitted)); United States v. Andrews, 12 F.4th 255, 261–62 (3d Cir. 2021) ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release."); United States v. Thacker, 4 F.4th 569, 576 (7th Cir. 2021) ("We take the opportunity here to answer squarely and definitively whether [a particular nonretroactive change in sentencing law] can constitute an extraordinary and compelling reason for a sentencing reduction.  It cannot.").

[6] E.g., United States v. Ruvalcaba, 26 F.4th 14, 26 (1st Cir. 2022) ("On the whole, given the language that Congress deliberately chose to employ, we see no textual support for concluding that such changes in the law may never constitute part of a basis for an extraordinary and compelling reason."); United States v. McCoy, 981 F.3d 271, 285 (4th Cir. 2020) ("[M]ultiple district courts have concluded that the severity of a . . . sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A).  We find their reasoning persuasive." (internal citations omitted)).

[7] The Second Circuit has also issued an opinion with dicta supporting the conclusion that nonretroactive changes in law can form the basis of an extraordinary and compelling reasons finding.  United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020) (stating that a defendant's arguments about "the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction" and citing United States v. Maumau, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *6–7 (D. Utah Feb. 18, 2020) (granting compassionate release in part on the basis of nonretroactive changes in law)).

United States v. Price, 496 F. Supp. 3d 83, 88 (D.D.C. 2020) ("But those changes to the law have not been made retroactive.  Nonetheless, this situation, as a number of courts have recognized, can present an extraordinary and compelling reason to reduce a defendant's sentence . . . .").  The D.C. Circuit has not yet taken a clear stance on the issue.  See United States v. Perkins, 857 F. App'x 663, 664 (D.C. Cir. 2021) (per curiam) (citing, but not necessarily endorsing, the Fourth Circuit's opinion in McCoy, 981 F.3d at 285, which held that nonretroactive changes in law can be relevant in the compassionate release context).

After considering these cases, and the parties' arguments, this Court concludes for two reasons that nonretroactive changes in law can form part of—and indeed, a substantial part of—a finding that extraordinary and compelling reasons warrant reducing a defendant's sentence.[8]

First, and most importantly, considering nonretroactive changes in law when deciding whether extraordinary and compelling reasons exist best aligns with separation-of-powers principles and the need to follow legislative intent.  The compassionate release statute provides that a court may reduce a defendant's term of imprisonment "in any case" if the statute's requirements have been satisfied, including that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  This language is broad, and nothing in the statute's text indicates that courts may not consider nonretroactive changes in law.  The absence of any such limitation is particularly significant given that, in a related statute, Congress gave the Sentencing Commission guidance on promulgating policy statements regarding the compassionate release statute and explicitly provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for release.  28 U.S.C. § 994(t).  Clearly,

---

[8] Because Johnson's motion identifies several factors that weigh in favor of granting his compassionate release motion, the Court need not decide whether nonretroactive changes in law can independently justify reducing a defendant's sentence.

Congress knows how to provide guidance on what may and may not be considered an extraordinary and compelling reason, so the fact that Congress has articulated no limitation regarding nonretroactive legal changes indicates that courts should be reluctant to impose one independently.  Ruvalcaba, 26 F.4th at 25.

Courts reaching the opposite conclusion have emphasized the need to respect Congress's decision not to make an intervening change in law retroactive.[9]  E.g., United States v. Jarvis, 999 F.3d 442, 444 (6th Cir. 2021) ("Why would the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean to use a general sentencing statute from 1984 to unscramble that approach?").  But the fact that Congress chooses not to make a law retroactive, which would entitle every eligible defendant to its benefit, does not mean that the change in law is irrelevant to the individualized determination a Court must make when deciding a compassionate release motion.  McCoy, 981 F.3d at 286–87 ("As multiple district courts have explained, there is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases.").  "Indeed, the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction."  Id. at 287 (citation omitted).[10]  Hence, considering nonretroactive changes in law when deciding whether an

---

[9] This objection applies only to intervening changes in law that are enacted by Congress, but some courts have relied on similar reasoning when considering subsequent judicial interpretations of law.  See, e.g., United States v. Hunter, 12 F.4th 555, 564 (6th Cir. 2021) ("The fact that this case involves non-retroactive precedent, as opposed to statutes, is no reason to take a different approach.  We are required to follow statutes and binding precedent.").

[10] For the same reason, the Court does not believe that the fact that 28 U.S.C. § 2255 entitles some defendants to relief on the basis of retroactive changes in law precludes the Court from considering nonretroactive changes in law when deciding compassionate release motions.  Whether an individual is entitled to relief in habeas is a different—though admittedly, sometimes related—question from whether he or she should be granted relief under the discretion authorized by the compassionate release statute.  Cf. United States v. Lawson, Crim. A. No. 03-282-1 (JDB), 2022 WL 2663887, at *12 (D.D.C. July 11, 2022).

individual defendant has demonstrated extraordinary and compelling reasons does not conflict with respecting Congress's decision not to make a legal change retroactive, and a desire to respect Congress's decision not to make a change retroactive is not a reason to rewrite the compassionate release statute and insert limitations that Congress has not authorized.  See Ruvalcaba, 26 F.4th at 27.

Second, this Court is also guided by the Supreme Court's instructive, but not directly on-point, recent decision in Concepcion v. United States, 142 S. Ct. 2389 (2022).  There, the Supreme Court considered what factors a court may consider when exercising its discretion to reduce a sentence under the First Step Act.  Id. at 2396; see also First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 ("A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.").  The Supreme Court emphasized the significant discretion courts exercise in both selecting an appropriate sentence and deciding to modify that sentence, 142 S. Ct. at 2398–2400, and concluded that "[t]he only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution," id. at 2400; see also id. at 2401, 2404 (holding that district courts may consider "unrelated Guidelines changes" when deciding whether to reduce a sentence under the First Step Act).  As explained previously, nothing in the compassionate release statute suggests that courts are prohibited from considering changes in law, and the fact that a particular change is not retroactive does not mean it should not be considered when deciding whether extraordinary and compelling reasons exist.  Hence, in accordance with Concepcion, and to give full effect to § 3582(c)(1)(A)(i), the Court concludes that

nonretroactive changes in law may be considered when determining whether extraordinary and compelling reasons warrant reducing a defendant's sentence.

## II.   Johnson Has Presented Extraordinary and Compelling Reasons Warranting a Reduction in His Sentence

Johnson's letter to his warden requesting compassionate release and his motion both cite many factors that he claims establish extraordinary and compelling reasons to reduce his sentence. Compassionate Release Request at 1–2; Mot. at 14–27.  Broadly speaking, these reasons can be grouped into three categories: the disparity between the sentence Johnson has served and the sentence he would likely receive if sentenced under the law as it exists today, Mot. at 14–21; his physical conditions and the threat posed by COVID-19, id. at 21–27; and his rehabilitation, id. at 27.  The government "invoke[s]" Section 3582(c)(1)(A)'s requirement that an incarcerated individual exhaust his arguments for compassionate release by first presenting them to his warden, Opp'n at 16–17, but also "agrees with Johnson that he has satisfied the exhaustion requirement" with respect to all his claims, id. at 17.[11]  The Court will therefore consider Johnson's three arguments in turn.

### A.   The Disparity Between the Sentence Johnson Received and the Sentence He Would Likely Receive If Sentenced Today

Johnson's main argument in support of compassionate release is that he was sentenced to nearly 27 years of incarceration for crimes that would likely result in a sentence of around 13 to 15 years if sentenced today.  See Mot. at 14–21 ("A sentence to twice the amount of time which should have been imposed is surely an extraordinary and compelling circumstance.").  As

---

[11] In the Court's opinion, it is somewhat debatable whether Johnson exhausted his claim for compassionate release on the basis of his rehabilitation.  The closest Johnson comes to mentioning his rehabilitation in his most recent letter to his warden is the statement that "Mr. Johnson is not a danger to the community."  Compassionate Release Request at 2.  Nevertheless, the Court need not engage in the debate now because the exhaustion requirement is not jurisdictional, Johnson, 464 F. Supp. 3d at 28–29, and the government agrees Johnson has exhausted his claims, Opp'n at 17.

discussed above, at the time Johnson was sentenced, the guidelines were mandatory, see Sentencing Tr. at 8:5–14, 18:16–19:2, and the guideline range of incarceration for the first count of Johnson's conviction was 262 to 327 months since he was a career offender, id. at 5:6–18, 6:12–16; PSR ¶¶ 33, 81; Mot. at 14.  He was sentenced as a career offender because, among other things, he had "at least two prior felony convictions of . . . a controlled substance offense."  2002 USSG § 4B1.1(a); PSR ¶ 33; Mot. at 3.  These convictions were for (1) unlawful distribution of PCP and marijuana and (2) attempted distribution of PCP.  PSR ¶ 20 & n.1; Mot. at 3.

In Winstead, the D.C. Circuit held that attempted distribution of controlled substances does not qualify as a "controlled substance offense" for the purpose of determining whether a defendant is a career offender.  890 F.3d at 1091 ("Section 4B1.2(b) presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses."); see also United States v. Campbell, 22 F.4th 438, 442–43 (4th Cir. 2022) (noting circuit split on issue).  Without the career offender enhancement, the total offense level for Johnson's count one conviction would have remained at 24,[12] see PSR ¶¶ 32–33, and the guideline range of incarceration would have been 100 to 125 months, see 2002 USSG § 5A.  Hence, even with the mandatory 60-month consecutive sentence for Johnson's count two conviction, his total guideline range of imprisonment would have been 160 to 185 months (or 13 years and four months to 15 years and five months).  Mot. at 14.

---

[12] There is an argument that the proper total offense level for Johnson's convictions on count one and three should have been 22 instead of 24.  The combined adjusted offense level for these two offenses was 24 because the base level for count three was 24.  See PSR ¶¶ 13–32; see also 2002 USSG § 3D1.4 (outlining rules for determining combined offense level for multiple offenses).  The base level for count three was 24 because Johnson committed the offense "subsequent to sustaining at least two felony convictions . . . of a controlled substance offense."  2002 USSG § 2K2.1(2); accord PSR ¶¶ 19–20.  Other courts have questioned whether Winstead's reasoning about the limited meaning of the phrase "controlled substance offense" in § 4B1.1(a) should also apply to the language in § 2K2.1.  E.g., United States v. Adams, 934 F.3d 720, 728 (7th Cir. 2019) (discussing debate); United States v. Havis, 927 F.3d 382, 386–87 (6th Cir. 2019) (extending Winstead's reasoning to § 2K2.1).  If Johnson's total base level had been 22, his guideline range of incarceration for counts one and three would have been 84 to 105 months (or seven years to eight years and nine months).  2002 USSG § 5A.  Johnson does not make this argument in his motion, however, so the Court will not credit it to him here.

Johnson has served over 20 years as of the date of this Memorandum Opinion.   Sentence Monitoring Computation Data at 3.

Johnson does not contend that the legal changes that have occurred since his sentencing are retroactive.   See Reply at 2–3 (describing the issue as "irrelevant").[13]   The government argues at length that because these legal changes are not retroactive, they cannot support granting Johnson's motion.   Opp'n at 17–25 ("[Johnson]'s claim that he should be released in light of Winstead has no merit because the decision is not retroactive and, in any event, such a claim is not properly presented in a compassionate-release motion.").   For the reasons outlined in the prior section, the Court disagrees with the government.   Nonretroactive changes in law, including the Winstead decision, can be relevant when deciding whether there are extraordinary and compelling reasons to reduce a defendant's sentence, and hence are relevant in this case.

The government argues in the alternative that nonretroactive changes in law may be considered only when deciding whether the factors outlined at § 3553(a) support reducing the defendant's sentence.   Opp'n at 25 n.17.   But the government's motion does not explain why nonretroactive changes in law can be relevant at that stage of the compassionate release inquiry but not when determining whether there are extraordinary and compelling reasons.   See id. Moreover, in the two cases the government cites in support of its understanding, the courts did not need to discuss (and thus did not discuss) whether nonretroactive changes in law can support a finding of extraordinary and compelling reasons because the courts found that the threat posed by

---

[13] But Johnson does emphasize that he would likely receive a lighter sentence due to judicial interpretations of law instead of newly enacted laws.   See, e.g., Mot. at 19.   He claims this distinction is significant because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."   Rivers v. Roadway Exp., Inc., 511 U.S. 298, 312–13 (1994); see Mot. at 19.   Nevertheless, Johnson's sentence was finalized before he could benefit from these judicial interpretations, and it is well-established that "a decision announcing a new rule of law applicable to criminal cases is retroactive only" in limited situations that Johnson has not argued are present here.   In re Fashina, 486 F.3d 1300, 1303 (D.C. Cir. 2007); see also Hunter, 12 F.4th at 564–65 (rejecting argument that judicial interpretations of law should be treated differently than newly enacted, nonretroactive laws in the compassionate release context).

COVID-19 constituted an extraordinary and compelling reason.  See United States v. Hickman, Crim. No. CCB-07-261, 2020 WL 6393391, at *2 (D. Md. Nov. 2, 2020) (noting the court "agree[d] with the parties" that COVID-19 constituted an extraordinary and compelling reason and that "[t]he only issue" in the case was whether the sentencing factors weighed in favor of a reduction in sentence); United States v. Danson, Crim. No. 10-0051 (PLF), 2020 WL 3467887, at *5 (D.D.C. June 25, 2020).  It would thus be an overreading of these cases to conclude that they support the government's view of the compassionate release statute.

The Court accordingly adheres to its conclusion that it may consider nonretroactive changes in law, including Winstead, when deciding whether extraordinary and compelling reasons warrant reducing Johnson's sentence.  Indeed, when confronted with a similar motion, Judge Chutkan held that Winstead, "given its significant bearing on [the defendant's] sentence, is itself an extraordinary and compelling reason to reduce his sentence."  Order at 3, United States v. Smith, No. 14-cr-189 (TSC) (D.D.C. May 14, 2020), ECF No. 76 (emphasis added).  Johnson's argument is even stronger than the defendant's argument in Smith since the sentencing guidelines were not mandatory at the time of that defendant's sentencing and he had already received a sentence below the guideline range.  See id. at 1, 3 (noting the defendant was sentenced to 100 months of incarceration even though the guideline range with the career offender enhancement was 188 to 235 months).  In this case, by contrast, Johnson's career-offender designation is directly responsible for more than eleven years of his twenty-seven-year sentence.  Hence, like Judge Chutkan in Smith, this Court concludes that the disparity between the sentence Johnson received and the sentence he would likely receive if sentenced today weighs strongly in favor of finding that extraordinary and compelling reasons warrant reducing his sentence.[14]

---

[14] But unlike Judge Chutkan, the Court declines to decide whether this disparity is sufficient on its own to justify reducing Johnson's sentence.

B.  Johnson's Physical Conditions and the Threat Posed by COVID-19

Johnson also argues that his physical conditions support finding that there are extraordinary and compelling reasons to reduce his sentence, particularly given the COVID-19 pandemic.  See Mot. at 21–27.  He primarily relies on the briefing in support of his prior compassionate release motion to outline his health conditions, see id. at 5, 7, 21–25, but his current motion mentions that he suffers from "hypertension, high cholesterol, and farsightedness," id. at 5; see also First Compassionate Release Mot. at 5, 22–23 (further explaining Johnson's health conditions). Johnson highlights his age (61) and race (Black) as risk factors that increase his susceptibility to COVID-19.  Mot. at 26–27; see also COVID-19 Risks and Vaccine Information for Older Adults, CDC (Aug. 4, 2021), available at https://www.cdc.gov/aging/covid19/covid19-older-adults.html (noting "[t]he risk [of severe illness from COVID] increases for people in their 50s and increases in 60s"); Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity, CDC (June 24, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (noting that African Americans have higher rates of hospitalization and death from COVID-19 than White, non-Hispanic individuals).

The government's opposition focuses on the fact that "Johnson [has] received his first and second shots of the Moderna vaccine . . . as well as a booster shot."  Opp'n at 26; see also Sealed Medical Records [ECF No. 89].  The government cites a litany of cases, including many from this Court, denying compassionate release motions filed by vaccinated individuals.  Opp'n at 26–28; see also United States v. Edwards, Crim. A. No. 03-234 (JDB), 2021 WL 3128870, at *3 (D.D.C. July 22, 2021) ("[S]everal courts in this District have recognized that vaccines reduce the risk that inmates with underlying conditions face from COVID-19."), aff'd, No. 21-3062, 2022 WL 1769144 (D.C. Cir. June 1, 2022) (per curiam); Morales, 2021 WL 4622461, at *6 (concluding

that the "substantial protection against COVID [conveyed by one dose of the Johnson and Johnson vaccine]—and especially against life-threatening courses of the disease—seriously undermine[d the defendant's] purported 'extraordinary and compelling reason' for release").

The Court has fully analyzed Johnson's physical conditions and susceptibility to COVID-19 in two prior opinions, Johnson IV, 2021 WL 3737681, at *4–7; Johnson II, 2020 WL 5518360, at *2–3, and the discussion here will be brief.  Once again, the Court concludes that Johnson's health concerns are not weighty enough to constitute extraordinary and compelling reasons for his release.  As an initial matter, the CDC's guidance does not list farsightedness or high cholesterol as factors that increase an individual's risk of becoming seriously ill from COVID-19.  See People with Certain Medical Conditions, CDC (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; see also Morales, 2021 WL 4622461, at *4 (discussing uncertainty over whether high cholesterol is a COVID-19 risk factor).  While Johnson's hypertension may increase his susceptibility to severe illness, see People with Medical Conditions, CDC (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (stating it is "possibl[e]" that hypertension increases risk),[15] the Court previously concluded that Johnson's hypertension is well-managed, Johnson IV, 2021 WL 3737681, at *5–6, and Johnson has not disputed this characterization.[16]

Johnson's age (61) also is not so advanced as to significantly change the Court's analysis.  See Johnson IV, 2021 WL 3737681, at *6 (noting Johnson's age increases his risk but concluding this increase did not constitute an extraordinary and compelling reason for release).  In reaching

---

[15] As the Court previously noted, the CDC's guidance states that there is "mixed" evidence for the proposition that hypertension is a COVID-19 risk factor.  Johnson IV, 2021 WL 3737681, at *5; accord Science Brief: Evidence Used to Update the List of Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19, CDC (June 15, 2022), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html.

[16] Johnson does argue that it is irrelevant that his hypertension is well-managed, Mot. at 23 (arguing hypertension is a risk factor regardless of how well it is managed), but the Court adheres to its earlier analysis.

this conclusion, the Court is guided, but not bound, by the policy statement at § 1B1.13, which indicates that age-based compassionate release may be warranted when other requirements are met and the defendant "is at least 65 years old."  U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(B) (U.S. Sent'g Comm'n 2021).  And this Court joins other courts in rejecting Johnson's argument for release on the basis of his race.  E.g., United States v. Rice, Crim. A. No. 17-128 (JEB), 2020 WL 6887790, at *3 (D.D.C. Nov. 24, 2020); United States v. King, Crim. A. No. 00-cr-313-01, 2021 WL 2588976, at *2–3 (E.D. Pa. June 24, 2021) (noting that courts "have consistently rejected the conclusion that a defendant's race places him at an increased risk of contracting COVID-19" (citation omitted)).

Most importantly, however, the fact that Johnson has received three COVID-19-vaccination shots significantly undermines his argument.  Morales, 2021 WL 4622461, at *6; United States v. Martinez, Case No. 1:05-cr-445-1 (RCL), 2021 WL 2322456, at *2 (D.D.C. June 7, 2021) ("[A]lthough [defendant] may have underlying conditions that could increase his risk of severe illness from the virus, the fact that he has been fully vaccinated mitigates that risk almost entirely.").  In part due to Johnson's vaccination status and the effectiveness of the COVID-19 vaccines generally, the Court is similarly still "not persuaded that Johnson's incarceration at FCI Cumberland considerably increases his chance of getting COVID-19."  Johnson IV, 2021 WL 3737681, at *7; see also COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (reporting that only four inmates at FCI Cumberland are currently COVID-19 positive) (last visited July 20, 2022); FCI Cumberland, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/cum/ (last visited July 20, 2022) (reporting 1,278 total inmates at the facility).  Suffice it to say, if Johnson's only argument for compassionate release were the risk he faces due to COVID-19, his motion would fail.  Cf. United States v.

Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

But the threat of COVID-19 is not Johnson's only argument for compassionate release. And though his health-related arguments are not independently sufficient to warrant granting his motion, they are still relevant to the Court's ultimate decision.  See Long, 997 F.3d at 357 (noting that courts must "balance all relevant considerations as part of a release decision"); Order at 3, United States v. Smith, No. 14-cr-189 (TSC) (D.D.C. May 14, 2020), ECF No. 76 ("[Defendant's] age, health, and the COVID-19 pandemic all weigh in favor of a sentence reduction . . . .").  Courts "accept that vaccines . . . reduce risk," but that does not mean that "no risk remains for vaccinated inmates."  United States v. Moe, Crim. No. 17-277 (KSH), 2021 WL 5277202, at *7 (D.N.J. Nov. 12, 2021).  Hence, the Court concludes that particularly given his age and underlying health conditions, Johnson's COVID-19 related arguments for release provide some, albeit meager, support for finding that extraordinary and compelling reasons warrant releasing Johnson from incarceration.

C.  Johnson's Rehabilitation

Johnson's final argument for finding extraordinary and compelling reasons is that his "rehabilitation has been truly extraordinary."  Mot. at 27.  He explains that "[f]or the past more than 16 years[,] he has had no disciplinary incidents."  Id.  He also reports that he has had only "one minor disciplinary report for being absent from an assignment" during his roughly two decades of incarceration, and that this incident occurred in 2005.  Id.; see also First Compassionate Release Mot. at 30–31 (detailing courses Johnson completed while incarcerated).

The government does not dispute Johnson's description of his disciplinary record.  Opp'n at 31 ("We note that Johnson has incurred only one infraction and completed a number of courses while he has been incarcerated.  The government appreciates that Johnson has avoided trouble while in prison and attempted to turn his life around.").  But the government argues that "the law makes clear that Johnson's rehabilitation efforts do not, on their own, amount to an extraordinary and compelling reason for release."  Opp'n at 29.

The government is correct; Johnson's rehabilitation "alone shall not be considered an extraordinary and compelling reason" for release.  28 U.S.C. § 994(t).  Again, however, Johnson does not ask for release solely due to his rehabilitation, and his rehabilitation is an important factor in the Court's analysis.  See United States v. Brown, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) ("For the word 'alone' to do any work—as it must—that means courts can consider rehabilitation as part of a compassionate release motion."); United States v. Torres, 464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020) ("Given the clarity of the statutory text, the Court holds that rehabilitation is relevant to whether there are extraordinary and compelling reasons for a sentence reduction."). Though Johnson's motion does not contain any letters from prison officials, a source that courts have considered persuasive when judging a defendant's rehabilitation, e.g., Lawson, 2022 WL 2663887, at *14, his record while incarcerated is nonetheless very impressive and a factor that weighs strongly in favor of granting his motion, see United States v. Fennell, 570 F. Supp. 3d 357, 364 (W.D. Va. 2021) (concluding that defendant's rehabilitation weighed in favor of granting his compassionate release motion in part because "[p]rison records indicate that [defendant] ha[d] incurred only one minor disciplinary infraction during his current term of incarceration and that he ha[d] maintained a clear disciplinary record for over five years"); United States v. Stephenson, 461 F. Supp. 3d 864, 873 (S.D. Iowa 2020) (granting compassionate release motion in part because

defendant "maintained a clear disciplinary record [over fifteen years of incarceration], no minor feat in any prison").

    D.  <u>Final Balancing</u>

Taken together, Johnson's three arguments establish that "extraordinary and compelling reasons warrant" reducing his sentence.   18 U.S.C. § 3582(c)(1)(A)(i).   Johnson has been incarcerated for several years longer than he would be if sentenced today, his rehabilitation while incarcerated is extremely impressive, and he is currently incarcerated during a global pandemic. Although the Court need not find that any one of these factors is sufficient standing alone, the Court concludes that, considered together, Johnson's arguments are sufficiently persuasive to clear the hurdle in § 3582(c)(1)(A)(i).   Cf. <u>Lawson</u>, 2022 WL 2663887, at *16 ("[A] collection of reasons each falling short of 'extraordinary and compelling' can, if considered together, still justify compassionate release.").

## III.   The § 3553(a) Factors Favor a Sentence Reduction

In determining that Johnson's motion should be granted, the Court has considered "the factors set forth in [S]ection 3553(a) to the extent that they are applicable."   18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) instructs courts to "impose a sentence sufficient, but not greater than necessary" and to consider several factors including "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   Although the Court will not discuss each § 3553(a) factor individually, consideration of all the factors confirms the Court's conclusion that Johnson's motion should be granted.

Two points in particular convince the Court that these factors favor reducing Johnson's sentence.  First, § 3553(a) instructs courts to consider the sentencing range for "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," id. § 3553(a)(6).  As explained above, if Johnson were sentenced in 2002 under the law as it exists today and by a court considering these factors, then he would almost certainly have received a sentence of incarceration that would have ended several years ago.  Cf. Sentencing Tr. at 18:16– 19:2 (containing Court's comment "that the sentencing guidelines do limit the flexibility and judgment of the [C]ourt in circumstances such as this").  Second, Johnson has never been convicted of a violent crime and has an exemplary prison disciplinary record.  Mot. at 27 (also claiming that Johnson's two prior felony drug convictions "each involved the sale of $10 worth of drugs"); see PSR ¶¶ 39–44.  These facts weigh in favor of reducing Johnson's sentence and help assure the Court that Johnson is not a danger to his community.  See Price, 496 F. Supp. 3d at 90–91; Report to the Congress: Career Offender Sentencing Enhancements, U.S. Sent'g Comm'n 3 (Aug. 2016), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf ("Drug trafficking only career offenders are not meaningfully different from other federal drug trafficking offenders and should not categorically be subject to the significant increases in penalties required by the career offender directive.").[17]

The government makes two main arguments in opposition.  The government first correctly notes that Johnson has a lengthy criminal history that includes gun offenses.  Opp'n at 30–31.  This history is concerning, and Johnson's convictions in this case are serious.  But these facts

---

[17] The Court also finds it relevant that Johnson is currently incarcerated at the minimum-security level.  Mot. at 5, 28.

demonstrate only that Johnson's crimes required a serious punishment.  The over 20-year sentence

Johnson has served fits that description and adequately reflects the seriousness of his offenses.

The government's second argument is that Johnson's release plan is "non-specific."  Opp'n at 31

(citing United States v. Allison, Case No. CR16-5207RBL, 2020 WL 3077150, at *4 (W.D. Wash.

June 10, 2020) ("Shortening a defendant's sentence where there is no adequate release plan offers

no benefit to the health of the inmate and in the process likely further endangers the community

into which the defendant is release[d].")).  But Johnson "intends to live with his girl friend in

Northeast D.C.," Mot. at 29, and the several vocational and life skills courses he has completed,

see First. Compassionate Release Mot. at 31, give the Court confidence that he will be able to find

gainful employment after he is released.  The Court will not deny Johnson's motion simply because

he does not have a job lined up at this point in time.  Cf. United States v. Lii, 528 F. Supp. 3d 1153,

1167 (D. Haw. 2021) (granting compassionate release motion brought by defendant who did not

have post-release employment secured); United States v. Adeyemi, 470 F. Supp. 3d 489, 533 (E.D.

Pa. 2020) (same).

## Conclusion

After considering all the facts of Johnson's case and the factors outlined in § 3553(a), the

Court concludes that "extraordinary and compelling reasons warrant" reducing Johnson's

sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  The Court will accordingly grant his motion and reduce

his sentence of incarceration to time served—which here is over 20 years.  Johnson must still

comply with the release conditions outlined in the Court's earlier Judgment, including six years of

supervision, <u>see</u> J. in Criminal Case at 3–4, but his term of imprisonment is (essentially) at an end.[18]  A separate Order will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  <u>July 21, 2022</u>

---

[18] Per the government's request, <u>see</u> Opp'n at 32 n.20, the Court will delay Johnson's release till a few days after the date of the Court's Order to ensure that Bureau of Prisons personnel have sufficient time to process his release and present him with appropriate documentation.